UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

YVONNE N. D.,[1]

                          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

_____

**DECISION AND ORDER**

1:23-cv-00559 (JJM)

        This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to

review the final determination of the Commissioner of Social Security that plaintiff was not

entitled to disability insurance ("DIB") or supplemental security income ("SSI") benefits. Before

the court are the parties' cross-motions for judgment on the pleadings [11, 19].[2]  The parties have

consented to my jurisdiction [27].  Having reviewed the parties' submissions [11, 19, 26], the

Commissioner's motion is granted, and plaintiff's motion is denied.

---

[1]      In accordance with the guidance from the Committee on Court Administration and Case
Management of the Judicial Conference of the United States, which was adopted by the Western District
of New York on November 18, 2020 in order to better protect personal and medical information of non-
governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]      Bracketed references are to the CM/ECF docket entries. Page references to the administrative
record are to the Bates numbering.  All other page references are to the CM/ECF pagination.

**BACKGROUND**

The parties' familiarity with the 1,646-page administrative record [5, 6] is presumed. Plaintiff filed applications for DIB and SSI in November 2016, alleging a disability beginning on January 1, 2013, due to back and neck injuries, bursitis of the left shoulder, depression, anxiety, fibromyalgia, chronic obstructive pulmonary disease, acute sinus and allergies, and arthritis.  Id. at 241, 248, 270.  This matter was previously remanded from this court.  Id. at 629-41.  The decision of the prior Administrative Law Judge ("ALJ") in this matter included a limitation to light work with some postural and environmental limitations, and a limitation to unskilled work with restrictions to interacting with others: "[s]he can interact occasionally with coworkers, but should generally work on tasks alone with minimal social demands".  Id. at 15.

District Judge John L. Sinatra, Jr. issued an oral decision finding that the RFC was not supported by substantial evidence.  He found that the consultative examination opinions of Nikita Dave, MD and Christine Ransom, PhD were not substantial evidence that supported specific portions of the ALJ's residual functional capacity ("RFC") findings.  Judge Sinatra first considered Dr. Dave's opinion and found that it did "not assign a degree of limitation based on plaintiff's fibromyalgia and is vague as to this impairment".  Id. at 634.  This was because of a confusing statement in Dr. Dave's January 13, 2017 opinion, which read:

> "Mild to moderate limitations for repetitive bending, twisting through the cervical and lumbar spine.  Prolonged sitting, standing, walking, lifting, carrying, pushing, and pulling of heavy objects due to spine and fibromyalgia".

Id. at 532.  Judge Sinatra concluded:

> "This statement does not assign a degree of limitation based on plaintiff's fibromyalgia and is vague as to this impairment.

> One can assume that the ALJ opined that it appears that Dr. Dave intended to assign a mild to moderate degree of limitations to these actions, but that is not entirely clear from the opinion.
>
> Even if the ALJ inferred a more restrictive RFC, given the lack of any other opinion evidence as to the effects of plaintiff's fibromyalgia, the Court, like the ALJ, is not in a position to assess the extent of functional limitation posed by this impairment.
>
> The ALJ should have sought clarification from Dr. Dave, rather than attempt to assume what he meant."

Id. at 634-35.

Next, Judge Sinatra turned to Dr. Ransom's report of her psychiatric consultative examination. He found that the RFC limitations related to plaintiff's interactions with others were not supported by substantial evidence. The RFC limited the plaintiff's interactions with coworkers to "occasionally", and stated that she "should generally work on tasks alone with minimal social demands" (id. at 15):

> "The groups of the public[,] supervisors and coworkers are distinct for the purposes of assessing the applicant's capacity to relate to others . . .
>
> Dr. Ransom's opinion does not distinguish between any groups of people, nor does the ALJ explain how Dr. Ransom's finding of episodic difficulty relating adequately to others supports a finding that limits interaction with coworkers, but is also devoid of any guidance as to any other group of people."

Id. at 636. Judge Sinatra remanded the case and directed the ALJ "to further develop the record as to plaintiff's fibromyalgia and mental impairments". Id.

The Appeals Council remanded the case to an ALJ "for further proceedings consistent with the order of the court". Id. at 644. The Appeals Council also recognized that the plaintiff had filed another claim for SSI benefits on August 1, 2020. Id. Because the second claim was now duplicative of her first, the Appeals Council consolidated the claims files and

ordered the ALJ to offer the plaintiff a hearing and "take any further action needed to complete the administrative record and issue a new decision."  Id.

An administrative hearing was held on November 3, 2022 before ALJ Theodore Kim. Id. at 536-60. Plaintiff, who was represented by an attorney, testified along with a vocational expert ("VE").  Id. at 542-59.

## ALJ KIM'S DECISION

On February 17, 2023, ALJ Kim issued a decision concluding that plaintiff was not disabled.  Id. at 650-64.  To reach that determination, ALJ Kim found that plaintiff had a number of severe impairments, including those relevant to this opinion: fibromyalgia, post-traumatic stress disorder, generalized anxiety disorder, major depressive disorder, and panic disorder.  Id. at 653.[3]  He found plaintiff had the residual functional capacity to perform light work, with additional limitations, including, *inter alia*, a sit/stand option, limitations for operating hand and foot controls, postural limitations, environmental limitations, and the following limitations related to plaintiff's mental health conditions:

> "the claimant can understand, carry-out, and remember simple instructions, and use judgment to make simple work-related decisions.  The claimant can occasionally interact with supervisors and co-workers, and can never interact with the public.  The claimant can deal with occasional changes in a routine work setting. The claimant cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas."

Id. at 657.

---

[3]     Plaintiff does not challenge these findings.

**OPINION AND OTHER EVIDENCE**

With the consolidation of plaintiff's claims, the record contained additional opinions from: Dr. Dave's and Dr. Ransom's December 11, 2020 consultative examinations; state agency medical consultants; and plaintiff's treating psychiatrist and therapist. Id. at 660-62. Dr. Dave concluded in his December 2020 opinion:

> "There may be mild to moderate limitations for heavy lifting, carrying, pushing, pulling, prolonged sitting, and prolonged standing. It would help if the claimant had allowances to change positions as needed. There may be some temporary interruptions of all exertional activity during bouts of severe headaches, likely to be transient with the use of medication."

Id. at 1228-29.

ALJ Kim assigned "some weight" to Dr. Dave's 2017 and 2020 opinions. Id. at 661. With respect to the December 2020 opinion, he found:

> "Dr. Dave's opinion in December 2020, is also afforded some weight . . . . He expanded his assessment of the claimant's functional limitations to include a sit/stand option and some interruption of exertional activity during bouts of severe headaches . . . . This is also afforded some weight, supported by signs of limited range of motion, decreased sensation to the lower extremity, tenderness to palpation of the spine . . . . A sit/stand option is also ultimately consistent with the claimant's updated lower extremity discomfort, whether secondary to fibromyalgia pain or an orthopedic issue".

Id. at 661.

ALJ Kim provided additional analysis of plaintiff's medical records. He reviewed reports of imaging studies of her spine, results of orthopedic examinations, and records documenting treatment for pain related to her fibromyalgia diagnosis, including lower extremity discomfort, which her provider acknowledged "may be secondary to an orthopedic issue". Id. at 658. He explained his reasoning with respect to the limitations incorporated into the RFC:

- 5 -

"Due to obesity, abnormalities in all three regions of the claimant's spine, signs of respiratory dysfunction, and fibromyalgia pain, a limitation to light work is appropriate, with additional postural and environmental limitations. The undersigned also assesses a sit/stand option and further accommodates the claimant's cervical spine by assessing manipulative limitations, which also accommodates the claimant's symptoms secondary to carpal tunnel syndrome."

Id. at 659.

Turning to plaintiff's mental health conditions, Dr. Ransom concluded in her

December 2020 opinion:

"This individual will experience mild limitation understanding, remembering and applying simple and complex directions and instructions, using reason and judgment to make work-related decision, interacting adequately with supervisors, co-workers, and the public, sustaining concentration and performing a task at a consistent pace, sustaining an ordinary routine and regular attendance at work, regulating emotions, controlling behavior, and maintaining well-being, and maintaining awareness of hazards and taking appropriate precautions. She is able to maintain personal hygiene and appropriate attire. Areas of difficulty are secondary to bipolar disorder, currently mild."

Id. at 1222.

ALJ Kim assigned Dr. Ransom's opinions "less weight". He explained:

"Although her opinions were supported by her mental status examinations showing only a 'mildly dysphoric and mildly tense' affect in 2017, the updated record reveals persistent reports of mood dysfunction".

Id. at 661.

ALJ Kim also analyzed plaintiff's mental health treatment records at both step 2

of his analysis and in his discussion of the RFC. See id. at 655-56, 659-660. At step 2, ALJ Kim

considered the degree of plaintiff's limitation in the broad functional area of "interacting with

others" during his analysis of "paragraph B" criteria.  Id. at 655.  He concluded that plaintiff had

a moderate limitation:

> "Early records from January 2017 include signs of a 'mildly
> dysphoric and mildly tense affect' [id. at 408].  In December 2020,
> the claimant continued to report feeling 'agitated and hyper' despite
> feeling improvement in her depression and anxiety [id. at 1220].
> Therefore, she has more than a mild limitation in this area.
> However, she continued to report mild improvement in her mental
> health symptoms in August 2022 and described her depression
> levels as 'manageable' [id. at 1640].  Her use of a service dog
> resulted in notable decreases in anxiety [id.].  She reported enjoying
> dog obedience classes and socializing some with others in the class
> [id.].  therefore, she has no more than a moderate limitation in this
> area."

Id. at 655-56.

During his analysis of plaintiff's RFC, ALJ Kim outlined mental health treatment

records and consultative examination reports documenting plaintiff's statements that her

medications relieve her depression and anxiety, "unremarkable" mental status examination

findings in April 2021, August 2022, and October 2022, and reports in August 2022 of

"manageable" levels of depression.  Id. at 660.

## DISCUSSION

### A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant

is not disabled only if the factual findings are not supported by 'substantial evidence' or if the

decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42

U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as

adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305

U.S. 197, 229 (1938).  ).  "[U]nder the substantial evidence standard of review, it is not enough

for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record". Cheatham v. Commissioner, 2018 WL 5809937, *9 (W.D.N.Y. 2018); *see also* Brault v. Commissioner, 683 F.3d 442, 448 (2d Cir. 2012) ("the substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*") (emphasis in original).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

**B.    Did ALJ Kim Fail to Properly Supplement the Record?**

Plaintiff argues, with respect to both the physical and mental health aspects of the RFC, that ALJ Kim failed to supplement the record as ordered by Judge Sinatra, leaving gaps in the record.  [11-1] at 25-26, 28, 29, 32, 35.  The Commissioner argues that, because the record of plaintiff's subsequent SSI claim was consolidated with her claim for DBI and SSI, the record no longer contained the gaps identified by Judge Sinatra.  [19-1] at 12-13.  I agree with the Commissioner.

It is well settled that "the ALJ is responsible for developing the claimant's complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help the claimant get medical reports from the claimant's own medical sources".  Martin v. Colvin, 2017 WL 370809, *4 (W.D.N.Y. 2017).  Where there is an "obvious gap" in the record, the ALJ as a "heightened duty to fully develop plaintiff's medical

record".  Id. at *3.  However, as a general rule, an ALJ is not required to further develop the

record where medical records do not appear to be missing, and the ALJ had the benefit of a

complete and legible treatment record.  Lowry o/b/o J.B. v. Astrue, 474 F. App'x 801, 804 (2d

Cir. 2012) ("where there are no obvious gaps in the administrative record, and where the ALJ

already possesses a complete medical history, the ALJ is under no obligation to seek additional

information in advance of rejecting a benefits claim"); *compare* Pratts v. Chater, 94 F.3d 34 (2d

Cir. 1996) ("[m]uch of Pratt's medical history is missing . . . the medical records that do appear

in the record are frequently incomplete or illegible and provide no coherent overview of Pratt's

treatment").

   Here, Judge Sinatra identified very specific gaps in the record.  With respect to

Dr. Dave's 2017 opinion, Judge Sinatra focused on the incomplete sentence in Dr. Dave's

opinion:

> "Dr. Dave opined that plaintiff had mild to moderate limitation in
> repetitive bending, twisting through the cervical and lumbar spine.
>
> Immediately following this was prolonged sitting, standing,
> walking, lifting, carrying, pushing and pulling of heavy objects due
> to spin fibromyalgia.
>
> This statement does not assign a degree of limitation based on
> plaintiff's fibromyalgia and is vague as to this impairment."

[5] at 634.  He concluded that "[t]he ALJ should have sought clarification from Dr. Dave, rather

than attempt to assume what he meant".  Id. at 635.  Dr. Dave's December 2020 opinion

provides that clarification.  He states, based on all the diagnoses he identified, which included

fibromyalgia in addition to "spinal axis pain", that the plaintiff may have "mild to moderate

limitations for heavy lifting, carrying, pushing, pulling, prolonged sitting, and prolonged

standing".  Id. at 1228-29.

With respect to Dr. Ransom's 2017 opinion, Judge Sinatra likewise identified a specific deficiency:

> "Dr. Ransom's opinion does not distinguish between any groups of people, nor does the ALJ explain how Dr. Ransom's finding of episodic difficulty relating adequately to others supports a finding that limits interaction with coworkers, but is also devoid of any guidance as to any other group of people."

Id. at 636.  However, Dr. Ransom's December 2020 opinion remedies this issue.  She states that plaintiff "will experience mild limitation . . . interacting adequately with supervisors, co-workers, and the public".  Id. at 1222.

It was these inadequacies, coupled with the ALJ's rejection of the only other opinion in the record, that left a "significant gap" for which "remand [was] required".  Id. at 637.  Accordingly, I interpret Judge Sinatra's direction "to further develop the record" and his remand "for further proceedings consistent with this ruling" as an instruction to clarify the inadequacies in Dr. Dave's and Dr. Ransom's opinions.  Id. at 637-38.  Further, the Commissioner - through the Appeals Council - complied with Judge Sinatra's directive to "further develop the record" by placing additional materials in the record for the ALJ to consider on the specific issues identified by Judge Sinatra.

Judge Sinatra could not have known that Dr. Dave and Dr. Ransom authored subsequent opinions that clarified the very deficiencies he identified because the December 2020 reports were not in the record he reviewed.  However, because those reports were included in the consolidated record on remand, the record was complete when it was assigned to ALJ Kim, without the specific gaps identified by Judge Sinatra.

I agree with the Commissioner that requiring the ALJ to independently develop additional evidence under these circumstances "puts form over substance".  *See* [19-1] at 12.

- 10 -

Plaintiff does not cite any authority to support her argument that the ALJ must develop additional evidence independently, even where the record is adequately supplemented with additional evidence from some other source following remand. *See* [11-1] at 25. To the contrary, "the Commissioner is permitted to take any action on remand that is not inconsistent with the Court's remand order". Parvon v. Commissioner, 2020 WL 1131220, *4 (W.D.N.Y. 2020).

Plaintiff fails to explain how the ALJ's reliance on the additional evidence in the record following remand, from the same consultative examiners and providers, concerning the same plaintiff and the same medical conditions, is inconsistent with Judge Sintra's instruction to further develop the record.

## C.      Did ALJ Kim Properly Assess Plaintiff's Ability to Interact with Others?

Plaintiff argues the ALJ erred in his analysis of plaintiff's ability to interact with others when he found that plaintiff could occasionally interact with supervisors and coworkers, and can never interact with the public. Id. at 28. She argues this was error because "these differential limitations among the three groups are not based on any medical opinion - as the ALJ had rejected all opinions - and instead the ALJ again erred by engaging in 'his own evaluation of the medical findings' as a lay person and failing to comply with the Court's order. Id.

The Commissioner argues that the ALJ's assignment of "less weight" to Dr. Ransom's 2017 and 2020 opinions is not equivalent to rejecting them. [19-1] at 9. Instead, the Commissioner argues that the ALJ afforded "less weight" to Dr. Ransom's conclusion that plaintiff had only mild limitations in the four functional areas of mental health. Id. at 10. The Commissioner argues that the ALJ's decision shows that he accepted Dr. Ranson's opinion that

plaintiff was limited in each functional area but assessed moderate, instead of mild, limitations

due to additional information contained in plaintiff's treatment records.  Id. at 10-11.

I agree with the Commissioner.  "The Court is required to look at the entire ALJ's

decision when reviewing for substantial evidence." Loni S. v Commr. of Social Sec., 2023 WL

4195887, *19, n.13 (N.D.N.Y. 2023).  Further, where "the evidence of record permits us to glean

the rationale of an ALJ's decision, we do not require that he have mentioned every item of

testimony presented to him or have explained why he considered particular evidence

unpersuasive or insufficient to lead him to a conclusion of disability."  Mongeur v Heckler, 722

F.2d 1033, 1040 (2d Cir. 1983).

Merely because the ALJ did not afford Dr. Ransom's opinion controlling or

substantial weight does not mean that he rejected Dr. Ransom's opinions or that he substituted

his own view of the medical evidence for those opinions:

> Just because the ALJ did not afford either opinion controlling
> weight does not mean that she substituted her own view of the
> medical evidence for those opinions. See Currie v. Comm'r of Soc.
> Sec., No. 17-CV-602(MAT), 2018 WL 5023606, at *3 (W.D.N.Y.
> Oct. 17, 2018) ("Simply because the ALJ afforded no single
> opinion controlling weight does not mean ... that she substituted
> her own expertise of the medical proof for medical opinion.").
> Moreover, because the ALJ relied on those opinions and other
> record evidence to determine Cottrell's RFC, she was not required
> to perform a function-by-function assessment. See Guttierez v.
> Berryhill, 333 F. Supp. 3d 267, 272 (W.D.N.Y. 2018) ("When an
> ALJ does not rely on a medical opinion to formulate the RFC, she
> must provide a function-by-function analysis of [the claimant]'s
> work-related capacity." (quotation mark and citation omitted)
> (emphasis added))."

Cottrell v. Commissioner of Social Security, 2019 WL 201508, *3 (W.D.N.Y. 2019).

Furthermore, the 2020 opinion cured the issues that Judge Sinatra identified with

the 2017 opinion.  Plaintiff argues that Dr. Ransom's 2020 opinion was "equally vague".  [26] at

4.  I do not agree.  The 2017 opinion stated that plaintiff would have "episodic difficulty . . .

relating with others".  [5] at 409.  Judge Sinatra specifically found that this opinion "did not

distinguish between any groups of people, nor does the ALJ explain how Dr. Ransom's finding .

. . supports a finding that limits interaction with coworkers, but is also devoid of any guidance as

to any other group of people".  Id. at 636.

The 2020 opinion specifically states that plaintiff "will experience mild limitation

. . . interacting adequately with supervisors, co-workers, and the public".  Id. at 1222.  Dr.

Ransom's 2020 opinion is therefore substantial evidence that plaintiff had limitations interacting

with each group of people.  In addition, ALJ Kim identifies specific medical records that support

his differential treatment of plaintiff's ability to interact with the public (never) compared to her

ability to interact with supervisors and co-workers (occasional).  Id. at 659.  Specifically, ALJ

Kim cites plaintiff's reports to Dr. Ransom concerning her symptoms in 2017 and 2020, in

addition to her reports to her treating provider in August 2022 of being "hyperaware of her

environment" with "some persistent mood dysregulation".  Id. at 659, *citing* id. at 1640 (August

25, 2022 treatment note).

Analysis of the August 2022 treatment note demonstrates that ALJ Kim's

characterization of plaintiff's symptoms is based on the information in the note.  It states in the

"History of Present Illness" section:

> "[Plaintiff] appears for her medication management [appointment].
> She continues to attend dog obedience classes and enjoys this (also
> has been working on socializing more here).  [Plaintiff] shares that
> she started taking her service dog into public and she has noticed
> that her anxiety levels have decreased.  PTSD [symptoms] are
> reported to be improving, she does report that she continues to be
> hyperaware of her environment . . . she also shares that she is very
> hyperaware of the environment (hyper-aware around men) when
> she has her grand-daughter. . . Anxiety levels are reported to be
> increased when she goes into public and she voices that as [she]

- 13 -

> continues to work with the dog she is hoping that these levels will decrease[]".

Id. at 1640.  In addition, this treatment note documents a mental status examination in which plaintiff is noted to be "cooperative", with an "appropriate" affect, "linear" and "goal directed" thought process, and "good" insight and judgement.  Id. at 1641.

ALJ Kim's RFC is supported by substantial evidence.  ALJ Kim relied on plaintiff's reports to Dr. Ransom in 2017 and 2020 in addition to the August 2022 treatment note to support his analysis:

> "In December 2020, the claimant continued to report feeling 'agitated and hyper' despite feeling improvement in her depression and anxiety [id. at 1220].  Although reporting improvement in August 2022, the claimant continued to report feeling 'hyperaware of her environment' and some persistent mood dysregulation [id. at 1640]. . . . Due to abnormalities of mood and affect, she is also precluded [from] more than occasional interaction with supervisors and co-workers, and she can never interact with the public".

Id. at 659.

The August 2022 treatment note demonstrates that plaintiff's anxiety levels increase while out in public, and she experiences the symptom of being hyper-aware.  It also supports the ALJ's finding that plaintiff was able to interact occasionally with co-workers and supervisors.  She was able to participate in activities held in a structured setting (dog obedience training) and socialize with others in the training class.  This treatment record is substantial evidence that supports ALJ Kim's differential limitations.

Finally, plaintiff noted that ALJ Kim assigned only "limited" weight to the "mostly incomplete" opinion of her treating psychologist and therapist.  [11-1] at 27.  They opined in their May 25, 2022 Mental Impairment Questionnaire that plaintiff would be absent from work more than three times per month due to her "frequent panic attacks".  [5] at 662,

*citing* id. at 1562-63.  ALJ Kim explained that "such extensive limitation in residual mental functioning is not consistent with the other evidence of record . . . For example, she continued to report mild improvement in her mental health symptoms [in] August 2022 and described her depression levels as 'manageable'".  Id. at 662.  Plaintiff does not argue that ALJ Kim's treatment of this opinion was an error.  Rather, she attempts to make the case that, with rejection of this opinion, ALJ Kim "rejected *all* the opinions in the record and did nothing to affirmatively develop the record".  [11-1] at 28.  As discussed above, this was not the case.

It is "well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. . . . The opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record."  Maleski v. Commissioner, 2020 WL 210064, *4 (W.D.N.Y. 2020); *see also* Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir. 2016) ("[t]he ALJ was permitted to consider [treating] Dr. Dawood's treatment notes in weighing the opinions of Dr. Dawood and [consulting psychologist] Dr. Kamin; and she was permitted to conclude that Dr. Kamin's opinion was more reliable").

ALJ Kim was therefore permitted to rely upon Dr. Ransom's opinions and the other evidence in the record to support the RFC.  None of his analysis was improper.  He adequately explained his treatment of all the opinions in such a way that one could understand why he made the determination he did, and upon which evidence.  I find that his analysis, read as a whole, satisfies his obligation "to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached".  Lopez obo Y.T. v. Commissioner of Social Security, 2020 WL 4504987, *2 (W.D.N.Y. 2020) (internal quotation omitted).  Although

there is evidence in the record that could support different findings, "there is substantial evidence to support the ALJ's decision.  The Commissioner, not the Court, is responsible for weighing conflicting evidence."  Pagan o/b/o Delgado v. Barnhart, 409 S.Supp.2d 217, 220 (W.D.N.Y. 2006).

**D.      Did ALJ Kim Properly Assess Plaintiff's Limitations Due to Fibromyalgia?**

Plaintiff's final argument is that ALJ Kim failed to develop the record concerning plaintiff's physical limitations, and that Dr. Dave's 2020 opinion, like his 2017 opinion, was inadequate to support the RFC.  [11-1] at 32.  She argues:

> "Dr. Dave again opined 'mild to moderate' limitations – which the
> district court order has already found 'vague' in her 2017 opinion –
> and the ALJ afforded this 2020 opinion (as well as Dr. Dave's
> 2017 opinion 'some' weight . . . The district court had ordered the
> ALJ to seek clarification of Dr. Dave's 'mild to moderate'
> limitations, not just to accept that opinion".

Id.

However, this argument misstates Judge Sinatra's decision.  He found that the error in Dr. Dave's 2017 opinion - the incomplete sentence - rendered it impossible to state with any clarity what Dr. Dave's findings were concerning the degree of limitation for the functions in that sentence, i.e. "prolonged sitting, standing, walking, lifting, carrying, pushing and pulling of heavy objects due to spine and fibromyalgia".  [5] at 634.

Dr. Dave provided more clarity in her 2020 opinion: "There may be mild to moderate limitations for heavy lifting, carrying, pushing, pulling, prolonged sitting, and prolonged standing".  Id. at 1229.  This opinion is no more vague that her 2017 statement that plaintiff had "mild to moderate limitations for repetitive bending, twisting though the cervical and lumbar spine".  Id. at 532.  Judge Sinatra did not find that portion of Dr. Dave's opinion

- 16 -

problematic. However, the incomplete sentence did "not assign a degree of limitation based on plaintiff's fibromyalgia and is vague as to this impairment". Id. at 634. He found that the "ALJ should have sought clarification from Dr. Dave, rather than attempt to assume what he meant". Id. at 635.

Dr. Dave's 2020 opinion provides the necessary clarification. ALJ Kim assigned Dr. Dave's 2017 and 2020 opinions "some" weight. Accordingly, ALJ Kim's limitation of plaintiff to light work, and the various postural, exertional, and other functional limitations in the RFC are supported by Dr. Dave's opinions that plaintiff had mild to moderate functional limitations due to her "spinal axis pain" and fibromyalgia.

Finally, plaintiff does not identify any opinion that supports greater restrictions in the RFC. "Ultimately it is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ". Beaman v. Commissioner, 2020 WL 473618, *6 (W.D.N.Y. 2020). Here, plaintiff did not do so.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [19] is granted and the plaintiff's motion [11] is denied.

**SO ORDERED**.

Dated: March 30, 2026

      /s/   Jeremiah J. McCarthy
      JEREMIAH J. MCCARTHY
      United States Magistrate Judge``

- 17 -